A07A1543. SWEET WATER TREE FARM, INC. v. J. FRANK SCHMIDT & SON, INC.
(651 SE2d 787)

ELLINGTON, Judge.

Sweet Water Tree Farm, Inc. appeals from the trial court's grant of summary judgment to J. Frank Schmidt & Son, Inc. ("Schmidt") in this suit on an account. Sweet Water contends that the court erred in granting summary judgment to Schmidt because material issues of fact exist regarding whether the indebtedness at issue was incurred by Sweet Water or by another corporation. For the following reasons, we reverse the court's judgment as to part of the indebtedness and affirm the remainder of the judgment.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

(Citation and footnote omitted.) *Rainier Holdings v. Tatum*, 275 Ga. App. 878 (622 SE2d 86) (2005).

Viewed in this light, the record shows the following. Schmidt is a wholesale live tree business. It filed suit against Sweet Water in January 2005, alleging that Sweet Water had purchased $23,284.13 in trees on account and had failed to pay for the trees. In March 2006, Schmidt filed an amended complaint which changed the amount of the debt to $23,182.75. Attached to the amended complaint was a credit application which showed that Deborah and Thomas Justice, President and Vice President of Sweet Water, applied for credit with Schmidt on behalf of Sweet Water on January 3, 2003. The Justices personally guaranteed the line of credit. The customer number listed on the application was "1119001." Also attached to the amended complaint were a statement of account and five invoices in the

amounts of $15,552.50, $4,500, $1,878.75, $816.50, and $435, totaling $23,182.75.[1] The customer number on the invoices was "1119001." The invoices showed that Sweet Water purchased the trees and that the trees were to be shipped to "Sweet Water Tree, 2497 Brickyard Rd., Dewey Rose, GA 30634" in February 2003.

Sweet Water responded to the complaint, denying that it owed anything to Schmidt and contending that the indebtedness on which the claim was based was actually incurred by a different company, Justice General Contractors, Inc., a South Carolina corporation (hereinafter, "JGC"). Deborah and Thomas Justice are the Vice President and President, respectively, of JGC. In addition, Sweet Water asserted that Schmidt should be estopped from pursuing any claims against it or the Justices because the Justices had filed for Chapter 11 personal bankruptcy in South Carolina in September 2003.[2]

In an affidavit, Deborah Justice denied that Sweet Water ever purchased any merchandise from Schmidt and stated that Sweet Water did not owe Schmidt any money. Although Justice admitted that Sweet Water had made a payment of $5,545.59 to Schmidt in November 2002, she claimed that the payment was toward JGC's debt. According to Justice, she ordered $15,515 worth of trees from Schmidt in May 2002 on behalf of JGC. The record includes an order acknowledgment showing a purchase totaling $15,515 by JGC, customer number "4111801." The acknowledgment showed that this purchase was to be shipped to "Justice General Contractors c/o Sweetwater Tree Farm" in Dewey Rose, Georgia.

Schmidt filed a motion for summary judgment and submitted affidavits from its credit manager, who stated that the items listed in the February 2003 invoices at issue in this case were ordered by Deborah Justice on behalf of Sweet Water and were delivered to Sweet Water at its Dewey Rose, Georgia address. The credit manager also stated that the November 2002 payment of $5,545.59 made by Sweet Water was not for the invoices upon which this suit was based, but was paid toward other invoices not at issue in this case.

The trial court granted summary judgment to Schmidt, awarding it $23,182.75 in principal plus interest, after finding that Schmidt had presented an affidavit and other evidence that demonstrated the trees at issue had been delivered to Sweet Water and that Sweet Water had failed to contradict this evidence. The court also found that

---

[1] Sweet Water did not challenge the admissibility of these business documents in the court below or on appeal.

[2] See Division 2, infra.

the Justices' personal bankruptcy had no effect on Sweet Water's obligations to Schmidt. Sweet Water appeals.

1. On appeal, Sweet Water contends that a jury issue exists as to whether Sweet Water or JGC purchased the trees at issue in this case. We agree in part.

(a) Specifically, Sweet Water argues that there are conflicts in the evidence regarding the purchase of $15,552.50 worth of trees. Sweet Water points to discrepancies between its copy of the order acknowledgment, which shows that JGC purchased the trees, and a copy of the same order acknowledgment which Schmidt submitted into evidence and which showed that the trees were sold to Sweet Water.[3] The record contains two versions of the order acknowledgment that are almost identical, listing the same types, quantities, and costs of trees, the same purchase and shipping dates, and the same order acknowledgment number. The names and addresses in the "sold to" and "ship to" boxes are different, however, as are the customer numbers and the credit terms. Sweet Water contends that this evidence demonstrates that, at some point after Schmidt sent the order acknowledgment to JGC, Schmidt altered the document to reflect that Sweet Water had actually made the purchase.

Having reviewed the record, we conclude that these conflicts in the evidence present a jury issue regarding which document accurately reflects the order and, thus, whether Sweet Water or JGC purchased the trees that were covered by the $15,552.50 invoice. Therefore, we reverse the court's grant of summary judgment to Schmidt on the indebtedness based on the $15,552.50 invoice. *Rainier Holdings v. Tatum*, 275 Ga. App. at 879-880 (2).

(b) There is no jury issue, however, regarding Sweet Water's liability for the remaining invoices. As shown above, Schmidt's credit manager stated in an affidavit that the trees listed in the invoices were delivered to Sweet Water in February 2003. Sweet Water did not contradict this evidence by presenting evidence that the trees had not been delivered, such as an affidavit denying that it had received the trees, or by presenting evidence that the trees listed in the remaining invoices had been purchased by JGC, as Sweet Water did regarding the $15,552.50 invoice. Further, there is no evidence that Sweet Water ever rejected the delivery or returned the trees to Schmidt.

Once Schmidt set forth a prima facie case of Sweet Water's indebtedness and the delivery of the goods, as reflected in the

---

[3] Although both versions of the order acknowledgment show a total purchase price of $15,515, it is undisputed that this is the same order as the $15,552.50 purchase shown in the statement of account and invoice upon which this suit is based; the difference in total costs appears to be attributable to minor increases in the costs of individual trees.

remaining invoices, Sweet Water had the burden of presenting evidence of specific facts to refute Schmidt's proof. *Kroger Co. v. U. S. Foodservice of Atlanta*, 270 Ga. App. 525, 529 (2) (607 SE2d 177) (2004); *Concept-Nat. v. DiMattina Supply Co.*, 147 Ga. App. 865, 866 (250 SE2d 552) (1978); see OCGA § 9-11-56 (e).[4] Sweet Water's general assertions that it did not purchase any trees from Schmidt and did not owe Schmidt any money is insufficient to meet its burden. *Griffin v. Georgia-Pacific Corp.*, 177 Ga. App. 852, 854 (3) (341 SE2d 499) (1986); *Concept-Nat. v. DiMattina Supply Co.*, 147 Ga. App. at 866; *Ambrose v. E. F. Hutton & Co.*, 146 Ga. App. 403, 404 (2) (246 SE2d 423) (1978). Because the affidavit of Schmidt's credit manager pierced Sweet Water's general denial, and Sweet Water has failed to set forth evidence of specific facts which show there is a genuine issue for the jury, the court's grant of summary judgment to Schmidt on the remaining invoices was proper. *Concept-Nat. v. DiMattina Supply Co.*, 147 Ga. App. at 866; *Ambrose v. E. F. Hutton & Co.*, 146 Ga. App. at 404 (2).

(c) The trial court also properly refused to credit Sweet Water's $5,545.59 payment to Schmidt toward Sweet Water's debt. Justice admitted that Sweet Water made that payment on JGC's account, and the check itself shows that Sweet Water made the payment to Schmidt on behalf of "Justice General 4111801."

2. Sweet Water does not challenge on appeal the court's conclusion that the Justices' personal bankruptcy had no effect on Sweet Water's indebtedness to Schmidt. Accordingly, that portion of the court's order is affirmed.

*Judgment affirmed in part and reversed in part. Andrews, P. J., and Adams, J., concur.*

DECIDED SEPTEMBER 7, 2007.

*John S. Jenkins*, for appellant.
*Scott M. Stevens*, for appellee.

---

[4] OCGA § 9-11-56 (e) provides, in relevant part, as follows:
When a motion for summary judgment is made and supported as provided in this Code section, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this Code section, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.