## A11A0784. MELMAN v. FIA CARD SERVICES, N.A.
### (718 SE2d 107)

PHIPPS, Presiding Judge.

John Melman appeals from the trial court's grant of summary judgment to FIA Card Services, N.A. on its suit against him on an account. Melman contends that FIA was not entitled to summary judgment because it failed to produce all records referenced in the affidavit it submitted in support of the motion, and it failed to explain discrepancies between the affidavit and the contents of the exhibits it did produce. For the reasons that follow, we affirm.

> Summary judgment is proper when the record reveals no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. We review the trial court's grant of summary judgment de novo, construing the evidence and all reasonable inferences in favor of the nonmoving party.[1]

FIA sued Melman in July 2008 alleging that he owed $38,560 on an account. Melman filed an answer generally denying the debt.

FIA moved for summary judgment. To support its motion, FIA submitted the affidavit of an FIA operation analyst who averred, among other things, that: she was familiar with FIA's business records, including those involved in this lawsuit; FIA's business records were kept under her supervision and control; and in making the affidavit she relied upon said business records and upon her personal knowledge. The operation analyst averred further that Melman had applied for and obtained credit from FIA; that Melman had made purchases and received advances from FIA which, together with other charges, totaled $38,560; and that Melman refused demands for payment. Attached to the affidavit were, inter alia, a credit card statement bearing the name "Bank of America" and showing a balance due of $38,560; and a copy of a form notice bearing the heading "Bank of America" followed by "Important Notice of Change in Terms" and "Credit Card Agreement." In the change in terms section, the notice stated that Bank of America Corporation and MBNA Corporation had merged, that the organizations were creating a credit card bank and consolidating "our credit card program into one bank: FIA Card Services, N. A.," and that effective October 2006 "your Bank of America credit card account will be issued and administered by FIA Card Services, N. A."

---

[1] *Nyankojo v. North Star Capital Acquisition*, 298 Ga. App. 6, 6-7 (679 SE2d 57) (2009) (footnote omitted).

In response to FIA's motion, Melman submitted a brief in which he asserted that FIA had not produced any evidence of an accepted credit application, of a contract between him and FIA, or that he was indebted to FIA. Melman also asserted that the operation analyst lacked personal knowledge of his business dealings. Melman submitted no evidence in response to FIA's motion for summary judgment.

1. Melman contends that FIA failed to establish the admissibility of the exhibits attached to the affidavit as business records pursuant to OCGA § 24-3-14 (b). Specifically, he argues that (a) the affidavit failed to specifically identify, describe or reference the exhibits as being FIA's business records, and (b) the operation analyst did not swear that the documents were truthful, accurate or complete. Pretermitting the question of whether Melman waived these arguments by not raising them below,[2] they are without merit.

OCGA § 24-3-14 (b) provides:

> Any writing or record ... made as a memorandum or record of any act, transaction, occurrence, or event shall be admissible in evidence in proof of the act, transaction, occurrence, or event, if the trial judge shall find that it was made in the regular course of any business and that it was the regular course of such business to make the memorandum or record at the time of the act, transaction, occurrence, or event or within a reasonable time thereafter.

(a) Here, the operation analyst stated under oath, in relevant part, that she maintained and was familiar with FIA's business records, including the records involved in the instant lawsuit; that FIA's business records were made in the regular course of the business; that it was the regular course of FIA's business to make such records at or near the times of the transactions; and that she relied upon said business records and her personal knowledge of the transactions in making the affidavit. She further averred that FIA

---

[2] See *Finch v. Caldwell*, 155 Ga. App. 813, 815 (273 SE2d 216) (1980) (noting that a challenge to the adequacy of the business records foundation can be waived); see generally *Caves v. Columbus Bank &c. Co.*, 264 Ga. App. 107, 111 (2) (a) (589 SE2d 670) (2003) (objection in trial court that testimony regarding account lacked foundation, without stating in trial court what the proper foundation should have been, presented nothing for consideration on appeal); see also *Formaro v. SunTrust Bank*, 306 Ga. App. 398, 400 (1) (702 SE2d 443) (2010) (argument that affidavit was defective because affiant lacked personal knowledge of transaction and documents were not attached to affidavit was not preserved when no such argument had been made to the trial court, either in motion to strike affidavit or in summary judgment brief); but see *Parlato v. MARTA*, 165 Ga. App. 758, 759 (1) (302 SE2d 613) (1983) (while failure to object to affidavit would have constituted waiver as to form, failure to object did not waive deficiency as to substance of affidavit, which had set forth contentions and conclusions without reference to any factual basis therefor).

accepted Melman's credit application, activated a credit card account on his behalf, and sent him a copy of the credit card agreement "attached hereto as Exhibit 1"; and that Melman made purchases and received advances under the account "as shown by Exhibit '2' attached hereto." Interpreting and applying OCGA § 24-3-14 (b) liberally,[3] we hold that FIA established the exhibits' admissibility as business records.[4]

(b) The documents were not rendered inadmissible by the fact that the affidavit, which was sworn, contained no express statement regarding their truthfulness, accuracy or completeness.[5] The court did not abuse its discretion in admitting the documents.[6]

2. Melman contends that FIA was not entitled to summary judgment because it failed to produce all papers or parts thereof referenced in the affidavit, as required by OCGA § 9-11-56 (e). Specifically, he points to FIA's failure to attach the credit application he allegedly submitted to FIA, the credit card agreement, and all credit card statements showing the charges and advances made and allegedly due FIA.

OCGA § 9-11-56 (e) provides:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in the evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. . . .

To show it was entitled to judgment against Melman on the credit card account, FIA was required to show that Melman entered into an agreement or established an account with FIA, accumulated a balance and failed to pay.[7] The Bank was required to attach to the

---

[3] See *Vadde v. Bank of America*, 301 Ga. App. 475, 478 (1) (687 SE2d 880) (2009); *Ishak v. First Flag Bank*, 283 Ga. App. 517, 519 (642 SE2d 143) (2007).

[4] See *Vadde*, supra at 478 (1) (a); *Ishak*, supra.

[5] See *Bagley v. Fulton-DeKalb Hosp. Auth.*, 216 Ga. App. 537, 539 (2) (455 SE2d 325) (1995) ("[a]n affidavit need not recite the words 'true and correct copies' before the accompanying business records will be admissible").

[6] See *Ishak*, supra.

[7] See *League v. Citibank*, 291 Ga. App. 866, 869 (2) (663 SE2d 266) (2008) (summary judgment for creditor affirmed where creditor produced evidence that the debtor requested and obtained the account, accumulated a balance and did not pay); *Davis v. Discover Bank*, 277 Ga. App. 864 (627 SE2d 819) (2006) (summary judgment for creditor affirmed where creditor produced evidence that a credit card was issued to the debtor along with a document providing that if he used the card he accepted the agreement, statements in the debtor's name that were mailed to the debtor and not returned, and an account statement showing the balance due);

affidavit copies of the records relied upon and referred to therein that were *pertinent* to Melman's debt.[8] It did.

FIA's affidavit referred to a credit card agreement, which agreement was attached thereto as Exhibit 1. The agreement, which was dated 2006, provided that its terms applied to the user of the account; the agreement further provided that as a result of a merger, the Bank of America account would be issued and administered by FIA. In the affidavit, the operation analyst averred that the agreement was sent to Melman and that Melman had made purchases, received advances and incurred charges "from [FIA] in the amount of $38,560[ ], as shown by Exhibit '2'." Exhibit 2 consisted of credit card statements, each of which bore Melman's name and address; the January 2008 statement showed a balance of $38,560. The statements bore the name "Bank of America," but also indicated: "This account is issued and administered by FIA Card Services, N. A."

> When a motion for summary judgment is made and supported as provided in [OCGA § 9-11-56 (e)], an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided [in OCGA § 9-11-56 (e)], must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him. It is . . . the duty of each party at the hearing on the motion for summary judgment to present his case in full.[9]

As shown above, FIA presented the sworn statement of its operation analyst which, together with the pertinent referenced documents that were admissible as business records pursuant to OCGA § 24-3-14, pierced the general denial in Melman's answer. A copy of the credit application was not required.[10]

> Where the business records conform to the provisions of the Code section, they themselves stand as a witness of the correctness of the account and make a prima facie case which shifts the burden of proof to the defendant debtor to

---

*Roberson v. Ocwen Fed. Bank*, 250 Ga. App. 350, 352 (2) (553 SE2d 162) (2001) (creditor was entitled to summary judgment in action on credit card account where it proved written executed agreement, terms of agreement and balance due).

[8] See *Taquechel v. Chattahoochee Bank*, 260 Ga. 755, 756 (2) (400 SE2d 8) (1991).

[9] *Intl. Business Consulting v. First Union Nat. Bank*, 192 Ga. App. 742-743 (386 SE2d 400) (1989) (citation and punctuation omitted).

[10] See *Davis*, supra at 865.

show the items contained in the [records], or some of them, are not correct.[11]

After FIA made out its prima facie case,[12] Melman made no showing that the items contained in the records were incorrect and there was a genuine issue to be tried. Thus, no genuine issue of fact remained for jury determination, and the trial court properly granted summary judgment in favor of FIA.[13]

3. Melman contends that FIA was not entitled to summary judgment because FIA failed to explain discrepancies and contradictions in the evidence regarding his account number and the creditor's name, and that the court was required to construe such contradictory testimony against FIA. Melman bases his argument upon the principle that "where the witness's sworn testimony is self-contradictory on a material point without explanation, . . . the court [is required] to disregard the portions of the testimony that favor the moving party."[14]

But Melman made no such argument below.

The purpose behind summary judgment is to dispose of litigation expeditiously and avoid useless time and expense to go through a jury trial. This purpose is thwarted when a party may withhold meritorious legal arguments until appeal. Allowing a party to raise new arguments also ignores the duties and responsibilities placed on the parties by OCGA § 9-11-56. Each party has a duty to present his best case on a motion for summary judgment. . . . [O]ur appel-

---

[11] *Intl. Business Consulting*, supra at 743 (citation and punctuation omitted).

[12] See *League*, supra; *Bozeman v. CACV of Colorado*, 282 Ga. App. 256 (638 SE2d 387) (2006) (creditor was entitled to summary judgment on credit agreement where record custodian's affidavit stated that defendant had established an account with creditor's predecessor but refused to pay, stated amount owed, and attached authenticated statement reflecting amount of debt on the account, but defendant failed to provide affidavit or other evidence to rebut the evidence); *Nugent v. SunTrust Bank*, 263 Ga. App. 730, 731 (589 SE2d 298) (2003) (summary judgment for creditor proper where it introduced an affidavit stating that the credit card application represented the agreement between the parties, debtors defaulted under the agreement and were indebted in a certain amount, and produced credit card application signed by debtors, monthly account statement showing balance, and check from debtor to creditor).

[13] See *Intl. Business Consulting*, supra. Compare *Taquechel*, supra (where affidavit was based in part on bank records, and it was clear that the portion of the affidavit which set out the amount owed was based on bank records, balance could not be established on summary judgment by means of bank president's affidavit which referred to bank records but did not have all or complete records attached); *Powers v. Hudson & Keyse, LLC*, 289 Ga. App. 251, 252 (1) (656 SE2d 578) (2008) (creditor in suit on account not entitled to summary judgment where motion was purportedly based upon an affidavit and accompanying exhibits, but creditor failed to attach any records establishing the debt).

[14] *Cowart v. Widener*, 287 Ga. 622, 633 (3) (c) (697 SE2d 779) (2010) (citation omitted).

late courts are courts for the correction of errors of law committed in the trial court. . . . To consider the case on a completely different basis from that presented below would be contrary to the line of cases holding, "He must stand or fall upon the position taken in the trial court."[15]

Thus, we need not consider this argument raised for the first time on appeal.[16]

We note, however, that Melman points to no authority showing that the account number was a material fact;[17] notably, the account statements submitted in this case all bore Melman's name and address. Further, any discrepancy regarding the creditor's name was explained in the notice of change in terms and account statements (which documents were properly admitted as business records). The court did not err in granting summary judgment to FIA.

*Judgment affirmed. Andrews and McFadden, JJ., concur.*

DECIDED OCTOBER 28, 2011 — 

William R. Carlisle, Jr., for appellant.
Dennis E. Henry, Salvatore L. Schiappa III, for appellee.

---

[15] *Pfeiffer v. Ga. Dept. of Transp.*, 275 Ga. 827, 828-829 (2) (573 SE2d 389) (2002) (punctuation and footnotes omitted); see *Holmes v. Clear Channel Outdoor*, 284 Ga. App. 474, 475-476 (1) (644 SE2d 311) (2007).

[16] See *Pfeiffer*, supra; *Rigdon v. Walker Sales &c.*, 161 Ga. App. 459, 462-463 (2) (f) (288 SE2d 711) (1982) (debtor appealing from grant of summary judgment to creditor waived his real-party-in-interest objection on appeal by failing to assert it in the trial court).

[17] See *Davis*, supra at 864-866 (creditor was entitled to summary judgment on credit card account where it: presented evidence that it issued a credit card to the debtor and sent to him an agreement which provided that he was bound by the agreement's terms if he used the card; submitted statements in the debtor's name that were mailed to him and not returned; and submitted evidence of the unpaid balance).